Ms. Cassandra JACKSON et al., Plaintiffs,

v.

NEW YORK CITY HEALTH AND HOS-PITALS CORPORATION, a body corporate, et al., Defendants.

No. 76 Civ. 1684(HFW).

United States District Court, S. D. New York.

June 21, 1976.

National Ass'n for the Advancement of Colored People, New York City, by Nathaniel R. Jones, James I. Meyerson, New York City, of counsel, Bronx Legal Services, New York City, by James Braude, New York City, of counsel, for plaintiffs.

W. Bernard Richland, Corp. Counsel, New York City, for defendants New York City Health and Hospitals Corp., Dr. Lowell E. Bellin and Dr. John L. S. Holloman, by Milton Weinberg, George Sawaya, New York City, of counsel.

## OPINION

WERKER, District Judge.

This is a class action alleging that the closing of Morrisania Hospital is racially discriminatory and seeking declaratory and injunctive relief. Plaintiffs allege that this closing violates both the due process and equal protection clauses of the fourteenth amendment as well as 42 U.S.C. § 1981 (1970). In addition, plaintiffs allege a violation of the Public Health Service Act, the Comprehensive Neighborhood Service Program Guidelines, 45 C.F.R. §§ 1060 et seq., and a so-called "OEO–HEW" Memorandum of Understanding. They also allege pendent state claims under Article XI of the 1970 By-Laws of the New York City Health and Hospitals Corporation, and Chapter 1016 of N.Y. Unconsol. Laws § 7384(11) (McKinney 1969). Jurisdiction is claimed under 28 U.S.C. §§ 1331(a), 1343(3) and (4) (1970), 28 U.S.C. § 1361 (Supp.IV 1974) and 5 U.S.C. § 702 (1970).

Plaintiffs have moved for a preliminary injunction and the defendants have in return cross-moved to dismiss the complaint or in the alternative for summary judgment. A hearing on the preliminary injunction motion was held on June 2 and June 3, 1976.

After hearing the evidence presented, this court concludes that plaintiffs have failed to establish a likelihood of success on the merits or irreparable harm and that they have failed to demonstrate a balance of hardships tipping decidedly in their favor or that this case raises substantial legal and factual issues going to the merits of the case. *Stamicarbon, N. V. v. American Cyanamid Co.*, 506 F.2d 532 (2d Cir. 1974); *Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir.) *cert. denied*, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969). Plaintiffs' motion for a preliminary injunction is therefore denied. Defendants' motion to dismiss is granted for failure of plaintiffs to state a claim upon which relief may be granted.

The named plaintiffs here are individuals in the Morrisania Hospital "catchment" area who utilize that hospital exclusively for their medical care, including blacks and Hispanics as well as elderly whites on fixed incomes, Congressman Badillo, the Citizens Coalition to Save Morrisania Hospital, Community Planning Board #4, the Morrisania Hospital Employees Council and the South Bronx Branch of the National Association for the Advancement of Colored People. The hospital was scheduled to begin closing operations on June 13. Two other hospitals in the Bronx, Fordham Hospital and "Old" Lincoln Hospital, have recently been closed. The statutory scheme for the New York City Health and Hospitals Corporation (the "Corporation") is set forth in N.Y. Unconsol. Laws § 7381 et seq., (McKinney 1975–1976 Pocket Part).

Plaintiffs contend that the pattern of the closing of hospitals within the Corporation is discriminatory with respect to minority groups. They contend that the hospitals which have remained open have been those with a more substantial white population than those which have been or are scheduled to be closed. Plaintiffs further contend that the closing of the hospital in and of itself is discriminatory because the impact of such a closing rests primarily upon minority groups who are by and large the users of these hospitals and also that the

closing of the hospital would deprive the members of the class of a "right to life."

The contention that a pattern of discrimination is evident in the closing of the hospitals within the Corporation, *see, e. g., Hawkins v. Town of Shaw,* 461 F.2d 1171 (5th Cir. 1972) *aff'g on rehearing en banc,* 437 F.2d 1286 (5th Cir. 1971), *Beal v. Lindsay,* 468 F.2d 287 (2d Cir. 1972), *Citizens Committee For Faraday Wood v. Linsday,* 507 F.2d 1065 (2d Cir. 1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1679, 44 L.Ed.2d 102 (1975), *Towns v. Beame,* 386 F.Supp. 470 (S.D.N.Y.1974), is not an issue which is raised on the facts of this case. The evidence shows that Morrisania was closed because it is an obsolete, 300-bed non-code compliant hospital which is being replaced by the "New" Lincoln Hospital, a new and efficient facility. The "New" Lincoln, with a 746-bed capacity will be able to accommodate more beds than the "Old" Lincoln and Morrisania combined. North Central Bronx Hospital, a 428-bed facility, is scheduled to open in the near future and will be accessible to former Morrisania-area patients as well. Although the evidence shows that "New" Lincoln is presently operating with handicaps, this is to be expected with the opening of a new hospital, and there is no reason to believe that it will not be operating at its projected capacity in the future. Difficulties which have arisen on account of lack of funds will be alleviated with the coming of the new fiscal year beginning July 1. Plaintiffs contend that there is a possibility that North Central Bronx will not remain under the control of the Corporation, but the evidence is to the contrary. Although there is a question as to which

hospital North Central Bronx might affiliate itself with, there was no doubt but that the Board of Directors had determined to maintain jurisdiction over North Central Bronx and that it would be operated in the same manner as other Corporation hospitals. In the interim, emergency care can be obtained from private and voluntary hospitals in the area since these hospitals are required by law to offer emergency treatment. N.Y. Public Health Law § 2805–b(2) (McKinney 1975–1976 Pocket Part).[1] The evidence shows that of all patients treated at the emergency rooms of "New" Lincoln and Morrisania, only a small percentage of these are real emergencies. At the Morrisania emergency room which treats 150,000 patients annually, the estimate as to the number of patients who are considered to be real emergencies ranged from 13 to 20 percent. At "New" Lincoln, the real emergencies were estimated at 10 percent of those treated at the emergency room. The "Old" Lincoln treated 135,000 emergency room patients per year.

Plaintiffs argue that the closing of Morrisania is irrational because of the fact that the City will lose money as a result. Their characterization of counsel for the Corporation as having conceded this point is unfair. The Assistant Corporation Counsel was merely indicating that it would still be necessary to provide medical services for the patients formerly utilizing the Morrisania area. But these services can be supplied more effectively and efficiently and on a larger scale with the "New" Lincoln. Plaintiffs' contention that the city will lose money because of increased payments to private and voluntary hospitals on account

1. Section 2805–b(2) provides as follows:

2. In cities with a population of one million or more, a general hospital must provide emergency medical care and treatment to all persons in need of such care and treatment and applying to such hospital therefor. Such care may be provided or procured by the general hospital at a location other than the general hospital if, in the opinion of the attending physician, the general hospital does not have the proper equipment or personnel at hand to deal with a particular medical emergency.

Nothing in this act shall be construed to deny to the attending physician the right to evaluate the medical needs of persons applying to the hospital for emergency treatment and to delay or deny medical treatment where, in the opinion of the attending physician, no actual medical emergency exists. However, no person actually in need of emergency treatment, as determined by the attending physician, shall be denied such treatment by a general hospital in cities with a population of one million or more for any reason whatsoever.

of the closing of Morrisania is not well-founded. Patients who would ordinarily utilize Morrisania will have "New" Lincoln and eventually North Central Bronx for their use and they will not be required to use private and voluntary hospitals. In addition, there are Department of Health Clinics and Neighborhood Family Health Care Centers available for non-emergency purposes. Plaintiffs' further argument that the closing of Morrisania is irrational because of the relative efficiency of Morrisania in comparison with other Corporation hospitals is not well-taken because the "New" Lincoln is planned to be an even more efficient facility. In any event, the question as to which hospitals within the system are the more efficient ones for the Corporation to operate should be a matter for determination by the Corporation, and it should also be within the Corporation's discretion to decide to operate new facilities rather than incur the expense involved in making an obsolete hospital code-compliant.

 As stated by the Supreme Court, "medical care is . . . 'a basic necessity of life.' " *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 259, 94 S.Ct. 1076, 1082, 39 L.Ed.2d 306 (1974). That fact notwithstanding, a municipality is not constitutionally required to provide a particular quantity or quality of health services. The hospitals within the Health and Hospitals Corporation are set up to provide essential medical services for those who cannot afford private care. The "declaration of policy and statement of purposes" in § 7382 of N.Y. Unconsol. Laws (McKinney 1975–1976 Pocket Part), states as follows:

> "A system permitting legal, financial and managerial flexibility is required for the provision and delivery of high quality, dignified and comprehensive care and treatment for the ill and infirm, *particularly to those who can least afford such services.*" (Emphasis added).

By closing Morrisania, no discrimination is evidenced as against any ethnic minority. Within the context of providing these services, the Corporation must have the discretion to determine in what manner its services are to be dispensed. There is no constitutionally protected right to a particular number of hospital beds or to a particular kind of medical services. Nor is there a right to access to medical care at a particular location. Any "right to life" through access to medical treatment must be limited by the discretion a municipality must have in providing medical services in the manner it sees fit. Thus, the placing, for example, of North Central Bronx in a predominantly white area in the northern Bronx is no more a deprivation of a constitutionally protected right than the placing of the "New" Lincoln in a predominately black and hispanic area. In addition, the claim that the Comprehensive Health Planning Districts ("CHPD") with the densest population will have a disproportionately small number of hospital beds with the closing of Morrisania also fails to amount to a constitutional claim. There is no significance to the division of the Bronx into the present CHPD's and an alleged inequitable distribution of medical facilities amongst these units is not a basis for a claim of unconstitutional action by the Hospitals Corporation. Although "New" Lincoln and North Central Bronx will be further away from some patients within the Morrisania catchment area, this is not true of all patients within the Morrisania area, and the fact that only a relatively small number of all "emergency" visits to that hospital are real emergencies indicates that any harm accruing as a result of the closing of Morrisania would not have the great impact plaintiffs contend.

 The language of the Supreme Court in *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) in the context of a decision concerning the Aid to Families with Dependent Children program is particularly apt:

> "But the intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this Court. The Constitution may impose certain procedural safeguards upon systems of welfare administration, *Goldberg v. Kelly*, ante, 397

U.S. 254, p. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients." *Id.* at 487, 90 S.Ct. at 1162–1163.

The "declaration of policy and statement of purposes" quoted at p. 6, *supra*, states that "A system permitting legal, financial and managerial flexibility is required" for the fulfillment of the goals of the Health and Hospitals Corporation. A federal court should not interfere with the flexibility required in the allocation of such scarce resources as medical care.

▇▇ An alternative ground for dismissing the action is the fact that plaintiffs have failed to allege an "'injury' in the constitutional sense," *Evans v. Hills*, Civil No. 74–1793 at 6779 (2d Cir. June 4, 1976), and thus lack standing. Like that alleged by the plaintiffs in *Evans*, the injury claimed by plaintiffs here is purely speculative in nature. In *Evans*, plaintiffs alleged that they were injured by action taken by a local Tri-State Regional Planning Council in declining to review federal grants for a white town in Westchester County, in that they were injured by the failure of that body through the action taken, to carry out the duty of the federal government to encourage integrated housing. The plaintiffs failed to allege that they had been discriminated against by the town in any way with respect to housing, that the challenged projects were discriminatory, or that the funds could have been used for another actual or proposed project from which they could have benefitted and thus failed to allege an adequate basis for standing. None of the plaintiffs here has alleged seeking and being denied treatment at "New" Lincoln. The allegation that treatment at "New" Lincoln would be inadequate due to defects in its present operation is based only on current conditions where that hospital has only begun operations. Moreover, as previously indicated the fact that some Morrisania-area patients will have to travel further to "New" Lincoln

does not arise to an injury of constitutional proportions. As stated by the Second Circuit in *Evans*:

"Disagreement with government action or policy, however strongly felt, does not, standing alone, constitute an 'injury' in the constitutional sense which is cognizable in the federal courts and susceptible of remedy by the judicial branch; it is a matter properly addressed to Congress or the Executive." *Id.* at 6779.

Standing is a requisite of Article III of the Constitution. It insures that the federal courts maintain their proper role in adjudicating only those suits representing real cases or controversies, and that issues are presented with a sufficient degree of adverseness necessary for their proper adjudication. *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). As stated by the Supreme Court in *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), plaintiffs must allege:

"such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions."

Plaintiffs unable to demonstrate more than an injury which is merely speculative have consistently been denied access to the courts. *See, e. g., Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (plaintiffs who claimed zoning ordinances excluded persons of low and moderate income failed to allege that the zoning practices caused their inability to locate suitable housing in the community); *S. v. D.*, 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) (mother suing to enforce a statute requiring the imprisonment of a parent for desertion of a minor child had inadequate standing since she gained no benefit if the father of her child were prosecuted); *Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972) (the mere knowledge that the army was surveilling civilian political activity and the fear of detriment if information thus gained were distributed was not sufficient injury to the plaintiffs'

first amendment rights since there was no allegation of specific objective harm, either present or future); *Tileston v. Ullman*, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943) (*per curiam*) (physician had no standing to contest a Connecticut anti-birth control statute on the basis of injuries to the constitutional rights of the doctor's patients).

 This court further lacks jurisdiction to consider plaintiffs' contention that Community Planning Board #4 was not consulted prior to the finalization of plans to close Morrisania. There was no evidence that federal funds were directly received by Morrisania. Nor is there any evidence that any grant was made to the Corporation allocated to Morrisania and requiring consultation and consent of the Community Planning Board or Advisory Committee. The only evidence marshalled on this issue was that federal funding does go to the Health and Hospitals Corporation but that no specific allocation of these funds is made to Morrisania. This court also lacks jurisdiction over the claim that the closing of Morrisania is in contravention of the defendant Corporation's resolution providing that Morrisania was not to close until the "New" Lincoln and North Central Bronx were both open. This is an issue dependent upon our jurisdiction over the constitutional claims in this suit which we have determined to be lacking in merit. This resolution was in any event superseded by the three-year plan which came into existence to deal with the budgetary crisis.

Since I have found no racial discrimination involved I do not find it necessary to consider whether the municipal corporation has established a "compelling state interest" behind the closing of the hospital.

The motion for a preliminary injunction is denied and the complaint is dismissed.

SO ORDERED.