Thomas HOFFMAN on behalf of himself and on behalf of all others similarly situated, Plaintiff,

v.

S. Samuel DiFALCO, Individually and in his official capacity as Administrative Judge of the Surrogate Court, County of New York, State of New York and Millard L. Midonick, Individually and in his official capacity as Surrogate Judge, County of New York, State of New York, Defendants.

No. 76 Civ. 3102.

United States District Court, S. D. New York.

Dec. 29, 1976.

Thomas Hoffman, pro se.

James I. Meyerson, New York City, for plaintiff.

Louis J. Lefkowitz, Atty. Gen., State of New York, New York City, for defendants; Alan R. Smulevitz, New York City, of counsel.

## OPINION

ROBERT J. WARD, Judge.

Defendants S. Samuel DiFalco ("DiFalco") and Millard L. Midonick ("Midonick") move pursuant to Rules 12(b)(1) and (6) and Rule 56, Fed.R.Civ.P., for an order dismissing this action or, in the alternative, granting summary judgment. The Court finds that plaintiff lacks standing to maintain this action and, accordingly, the complaint is dismissed.

Plaintiff Thomas Hoffman ("Hoffman"), an attorney admitted to practice in the State of New York, seeks in this action declaratory and injunctive relief to prevent the defendants, judges of the Surrogate's Court, New York County, from continuing certain alleged practices which Hoffman claims are in derogation of his rights under the first, fifth and fourteenth amendments to the United States Constitution and 42 U.S.C. § 1983. This Court's jurisdiction is predicated upon 28 U.S.C. §§ 1343(3), 1343(4), 2201, and 2202.

In January 1975, Hoffman wrote a letter to DiFalco identifying himself and expressing an interest "in receiving appointments from the Surrogates Court in Estate proceedings." He indicated that he had experience, considered himself qualified, and requested to be advised of "the procedure and/or regulations I need to follow in order that I may receive such an appointment." Plaintiff did not communicate such a request to Midonick. He received neither a response from DiFalco nor any appointments from either defendant.

The appointments at issue are made by Surrogate's Court judges pursuant to § 403 of the New York Surrogate's Court Procedure Act (S.C.P.A.) (McKinney 1967), which provides in part:

Appointment of guardian ad litem

2. By the court. A person under disability who does not appear by his guardi-

an or committee pursuant to 402 shall except as otherwise expressly provided appear by a guardian ad litem appointed by the court on nomination or on its own initiative whenever such person is a necessary party or for other reason the court deems it necessary to appoint a guardian ad litem to protect the interests of such party.

Section 404(1) of the S.C.P.A. sets forth the broad requirement that "[a] guardian ad litem shall be an attorney admitted to practice in New York." (McKinney Supp.1975).

Plaintiff asserts that defendants have violated his first amendment rights by making appointments allegedly based upon personal and political associations. Furthermore, Hoffman claims that his rights under the fifth and fourteenth amendments have been breached in that the appointments are not grounded on objective standards but are instead arbitrary and capricious. He purports to represent all attorneys similarly situated.

Hoffman seeks a judgment declaring unlawful and enjoining, both preliminarily and permanently, the appointment of guardians based on political and personal considerations as well as barring the use of arbitrary and discretionary policies in making these appointments pursuant to the S.C.P.A. He further demands a preliminary and a permanent injunction ordering defendants to adopt a procedure establishing a list "open to all attorneys meeting an objective criteria of competence," from which guardians *ad litem* could be chosen on a rotating basis. Hoffman also requests whatever further relief justice requires, including costs and attorney's fees.

Defendants assert that plaintiff lacks standing. This preliminary question must be examined in some depth.

■ Merely denominating a suit as a class action does not obviate the requirement of a personal injury. "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton,*

414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). This Court's standing analysis must, therefore, focus on Hoffman himself.

The concept of standing has been described as among "the most amorphous in the entire domain of public law," *Hearings on S. 2097 Before the Subcomm. on Constitutional Rights of the Senate Comm. on the Judiciary,* 89th Cong., 2d Sess., pt. 2, 465, 498 (1966) (statement of Professor Paul A. Freund), and as a "complicated specialty of federal jurisdiction." *United States ex rel. Chapman v. FPC,* 345 U.S. 153, 156, 73 S.Ct. 609, 97 L.Ed. 918 (1953). However, recent cases handed down by the Supreme Court and by the Court of Appeals for the Second Circuit have further defined the limits imposed by this doctrine. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 267, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Evans v. Lynn,* 537 F.2d 571 (2d Cir. 1976) (*en banc*). These decisions make it clear that, although it is to be hoped that there is a remedy for every wrong, the Courts are not always the appropriate forum for relief.

■ The standing test is two pronged: . . . first, whether the plaintiff-appellees allege "injury in fact," that is, a sufficiently concrete interest in the outcome of their suit to make it a case or controversy subject to a federal court's Art. III jurisdiction, and, second, whether, as a prudential matter, the plaintiff-appellees are proper proponents of the particular legal rights on which they base their suit.

*Singleton v. Wulff, supra,* 96 S.Ct. at 2873. In analyzing Hoffman's standing, this Court, then, looks first to the presence or absence of an "injury in fact."

■ The "injury in fact" requirement has recently been reformulated by the Supreme Court:

As we reiterated last Term, the standing question in its Art. III aspect "is whether

the plaintiff has 'alleged such a personal stake in the outcome of the controversy' to warrant *his* invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin,* 422 U.S. 490, 498–499 [95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 354] (1975) (emphasis in original). In sum, when a plaintiff's standing is brought into issue the relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision. Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation.

*Simon v. Eastern Kentucky Welfare Rights Organization, supra,* 96 S.Ct. at 1924 (footnote omitted). The Second Circuit, too, has recently delineated the requirement of an "injury in fact" in clear and unmistakable terms.

The hallmark of a case or controversy is the presence of adverse interests between parties who have a substantial personal stake in the outcome of the litigation. Standing to sue, in its Constitutional sense, is the showing by a plaintiff that his particular grievance meets this standard, the "essence" of which is the presence of "injury in fact" suffered by the plaintiff as a result of the defendant's actions.

Mere interest in, or concern over, a prospective defendant's acts—no matter how deeply felt—is insufficient to demonstrate injury in fact. What must be shown is a "specific and perceptible harm"—a "concrete injury" actually suffered by the particular plaintiff, or else clearly imminent, which is capable of resolution and redress in the federal courts. Abstract or hypothetical injury is not enough:

*Evans v. Lynn, supra* at 591 (footnotes omitted). Furthermore, the *Evans* Court noted that "[d]isagreement with government action or policy, however strongly felt, does not, standing alone, constitute an 'injury' in the Constitutional sense which is

cognizable in the federal courts and susceptible of remedy by the judicial branch." *Id.* at 598. In other words, speculative injury does not confer standing. *Jackson v. New York City Health & Hospitals Corp.,* 419 F.Supp. 809, 813–14 (S.D.N.Y.1976).

■ Has Hoffman suffered a "specific and perceptible harm"—a "concrete injury?" And, if so, what is the nature of that injury? The following analysis, used in *Simon v. Eastern Kentucky Welfare Rights Organization, supra,* 96 S.Ct. at 1925, is relevant to this inquiry:

The obvious interest of all respondents, to which they claim actual injury, is that of access to hospital services. In one sense, of course, they have suffered injury to that interest. The complaint alleges specific occasions on which each of the individual respondents sought but was denied hospital services solely due to his indigency, and in at least some of the cases it is clear that the needed treatment was unavailable, as a practical matter, anywhere else. The complaint also alleges that members of the respondent organizations need hospital services but live in communities in which the private hospitals do not serve indigents. We thus assume, for purposes of analysis, that some members have been denied service. (footnote omitted).

Applying this mode of analysis to the facts of the instant case leads to the conclusion that Hoffman's interest is that of access to guardianship appointments. His injury, if any, would be in the denial of such an appointment. It has not been controverted that Hoffman has received no appointments. Yet, "the 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant . . . ." *Simon v. Eastern Kentucky Welfare Rights Organization, supra* at 1926. Has plaintiff suffered at the hands of the defendants? Can it legitimately be asserted that he has been *denied* an appointment?

In other cases, courts have been confronted with a plaintiff who is not really in a

position to claim injury. *Jackson v. Dukakis,* 526 F.2d 64 (1st Cir. 1975), was a suit charging the Governor of Massachusetts and the heads of sixteen state agencies with racially discriminatory hiring practices. Jackson was dismissed from the action at the district court level for lack of standing. *Jackson v. Sargent,* 394 F.Supp. 162 (D.Mass.1975). This determination was upheld on appeal.

Although Jackson decried the racial bias allegedly evidenced by defendants state agencies' hiring practices, he had never sought employment with them. Thus, he had not taken the steps necessary to put himself in a position to suffer at the hands of the defendants, and could not claim injury in fact. 526 F.2d at 65–66.

Apropos to Hoffman's first amendment claim, the court in *Jackson v. Dukakis* also considered Jackson's standing in light of cases which had recognized that potential government action may have a "chilling" effect upon fundamental liberties. *Id.* at 66. It concluded that these decisions were of no assistance to Jackson and noted that "allegations of a subjective chill" were not enough to confer standing. Instead, a "claim of specific present objective harm or a threat of a specific future harm," would be required. *Id.* at 66, n.2 (citations omitted). *See also Laird v. Tatum,* 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972).

In *Berrigan v. Norton,* 451 F.2d 790 (2d Cir. 1971), two imprisoned clergymen challenged a prison regulation limiting the distribution of writings for publication outside the institution. The district court denied a preliminary injunction, 322 F.Supp. 46 (D.Conn.1971), and the denial was affirmed on appeal.

Apparently the Berrigans had prepared a sermon but had never approached the warden directly to obtain permission to disseminate it. There had been some tentative communications between the Berrigans and their caseworkers regarding the sermon, but Daniel Berrigan testified that he never actually showed a copy to his caseworker because, "I think we had it in mind that the request would be turned down. And we

also had in mind the necessity of a test case." 451 F.2d at 792. Philip Berrigan gave a copy to his caseworker but then did not follow up on a suggestion that it be discussed. *Id.*

The warden testified that he had reservations about a portion of the sermon and had refused requests from persons outside the prison that the Berrigans be permitted to deliver a sermon through personal appearances or tape recordings. *Id.* at 793.

However, the Court of Appeals observed that the sermon had never been officially rejected, noting that, "there is nothing in this record from which we can conclude with reasonable certainty that the sermon in question would have been rejected had it been submitted, or indeed that any request was made to the caseworkers to submit it to the appropriate prison authority for examination." *Id.* Consequently, the Court held that plaintiffs "do not appear to present a justiciable case or controversy." *Id.*

In light of these cases, has Hoffman placed himself in a truly adversary position? Have defendants in turn placed him in circumstances in which he can claim tangible injury?

Hoffman's "application" for a guardianship appointment consisted of a single letter to one of the two Surrogates. This Court takes judicial notice that a judge receives daily quantities of mail including a variety of pleas and requests. It would place an enormous burden on the judiciary if every such inquiry had to be personally answered. Yet the existence of such a duty would be implicit in the conclusion that Hoffman was entitled to a response and that in failing to answer, DiFalco breached Hoffman's Constitutional rights. The Court is not prepared to imply such a duty on the facts of this case, particularly in light of Hoffman's apparently meager efforts to evoke a response from the Surrogates.

*Glover v. St. Louis-San Francisco Railway Co.,* 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), cited by Hoffman to justify his cursory effort to place himself in an adversary position with defendants, is

inapposite. Hoffman's single letter written to one of the two defendants is simply not comparable to the "petitioners' repeated complaints to company and union officials," which fell on deaf ears in *Glover. Id.* at 331, 89 S.Ct. at 552.

■ The function of a court is to provide relief specifically tailored to correct a particularized abuse suffered by the plaintiff before it. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937). Accordingly, the "injury in fact" requirement also demands that the court inquire whether the relief sought by plaintiff would be likely to redress his asserted injury. Thus, the Supreme Court in *Simon v. Eastern Kentucky Welfare Rights Organization, supra,* 96 S.Ct. at 1927–28, reasoned that "the complaint suggests no substantial likelihood that victory in this suit would result in respondents' receiving the hospital treatment they desire," and therefore held that plaintiffs lacked standing. *See also Linda R.S. v. Richard D.,* 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed. 536 (1973).

■ Here, the decree Hoffman seeks might afford him greater access to guardianship appointments but certainly would not assure his receipt of an appointment. Consequently, such a decree would address his interest (access), but would be unlikely to redress his asserted injury (denial of appointment).

In sum, Hoffman did not take sufficient steps to put himself in a position to be injured by the defendants. Therefore, the Court will not speculate as to whether the plaintiff's failure to obtain appointments was the result of defendants' acts. Furthermore, even if plaintiff was in fact injured at the hands of defendants, his asserted injury would not likely be redressed by the relief requested. Therefore, Hoffman has not met the first standing requirement of "injury in fact," and *a fortiori* cannot meet the second requirement that "as a prudential matter [he is the] proper [proponent] of the particular legal rights." *Singleton v. Wulff, supra,* 96 S.Ct. at 2873.

■ The Court is not inclined to speculate as to who, if anyone, might be a proper champion of the cause Hoffman seeks to represent. Similarly, even if his lack of standing would mean that no one would have standing to challenge the procedures herein attacked, this would not alter the Court's finding that Hoffman himself does not meet the injury in fact requirement. As the Supreme Court observed in *Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 227, 94 S.Ct. 2925, 2935, 41 L.Ed.2d 706 (1974):

> Closely linked to the idea that generalized citizen interest is a sufficient basis for standing was the District Court's observation that it was not irrelevant that if respondents could not obtain judicial review of petitioners' action, "then as a practical matter no one can." Our system of government leaves many crucial decisions to the political processes. The assumption that if respondents have no standing to sue, no one would have standing, is not a reason to find standing. See *United States v. Richardson,* 418 U.S. [166,] at 179 [94 S.Ct. 2940, at 2947, 41 L.Ed.2d 678] [1974].

The judges of the Surrogate's Court are elected officials and thus subject to the "political processes" referred to in *Schlesinger v. Reservists to Stop the War, supra* at 227, 94 S.Ct. 2925. In this regard, the Court notes that DiFalco, the sole defendant with whom plaintiff had any communications, will no longer be on the bench subsequent to January 1, 1977. After many years of service he is retiring and a new judge, elected in November of 1976 on an anti-patronage platform, will fill the position. 176 N.Y.L.J., November 29, 1976, at 1 col. 2. This further reduces the instant action from a true controversy characterized by "concrete adverseness," *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), to "an ingenious academic exercise." *United States v. SCRAP,* 412 U.S. 669, 688, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).

As the Court finds that Hoffman lacks standing to maintain this action, it cannot

exercise jurisdiction over his claim. It would, therefore, be inappropriate to reach the other grounds raised in defendants' motion to dismiss, serious and substantial though they may be.

Accordingly, defendants' motion is granted and the complaint is dismissed for lack of standing.

It is so ordered.