LOCAL 736, the WILLIAMSPORT
FIREFIGHTERS et al.

v.

CITY OF WILLIAMSPORT, Daniel
Kirby, Mayor et al.

No. 78–1254 Civil.

United States District Court,
M. D. Pennsylvania.

Jan. 31, 1979.

Clifford A. Rieders, Williamsport, Pa., for plaintiffs.

Ronald C. Travis, Michael J. Casale, Williamsport, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

In this action brought pursuant to 42 U.S.C. § 1983, nine plaintiffs, firemen and citizens of Williamsport, Pa., seek to represent all the citizens of Williamsport as a class and to challenge their (plaintiffs') lay-

off as firemen in that city.[1,2] Defendants are the city of Williamsport, its Mayor and the City Council. Plaintiffs claim that as citizens and taxpayers of Williamsport, they have a "property" interest in the adequacy of their fire protection and that the layoff has deprived them of this interest without due process of law. In their complaint plaintiffs also contend that the layoff violated various rights they had as firemen and municipal employees.[3] The parties have now submitted an agreed statement of facts and a stipulation. *See* documents Nos. 17, 18, & 20. Briefs were filed by the parties on January 29, 1979, and the matter is ripe for disposition.

The claims that plaintiffs raised regarding their rights as municipal employees have all, except one, *see infra*, been settled. The issues now before the court are: (1) whether to abstain; (2) whether plaintiffs as citizens and taxpayers of Williamsport, in fact, have a "property" interest in adequate fire protection such that the defendants may not reduce the number of firemen (assuming the reduction results in inadequate fire protection) without providing some sort of public hearing in order to satisfy procedural due process; (3) whether, if plaintiffs as citizens do have such a "property" interest, the budget hearings held by defendants in the latter part of 1978 satisfy the requirements of procedural due process; (4) if a public hearing must now be held, what type of appeal rights are available to contest the outcome of that hearing; (5) whether plaintiffs may maintain a class action on behalf of all the citizens and taxpayers of Williamsport; and

(6) whether the scope of the Civil Service hearing which plaintiffs as firemen will now presumably request and receive, should be determined initially by the court.

I conclude that this case is not a proper case for invoking the abstention doctrine and, hence, I will reach the merits. I have decided that plaintiffs[4] do not have a "property" interest here requiring defendants to hold public hearings or the like before they may reduce the number of firemen in Williamsport. Given that determination, I will not reach issues numbers three (3) sufficiency of budget hearings, four (4) appellate rights, and five (5) maintenance of class action. As to number six (6), I do not believe it appropriate for this court to decide in the first instance what should be the scope of the Civil Service hearings to be given the plaintiffs as firemen. Accordingly, the action will be dismissed.

## ABSTENTION

██ Defendants claim that this court should abstain here based on that prong of the abstention doctrine as originally set out in *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In *D'Iorio v. County of Delaware*, 592 F.2d 681 (3d Cir. 1978), the United States Court of Appeals for the Third Circuit listed the three prerequisites that must be met for the application of this doctrine. First, there must be uncertain issues of state law underlying the federal constitutional claims. Secondly, the state

1. Plaintiffs originally sought to enjoin defendants from terminating their employment. On December 28, 1978, one day before the proposed layoff, this court temporarily restrained defendants from discharging plaintiffs until January 8, 1979. This TRO was conditioned on plaintiffs' posting a bond of $10,000. The TRO was extended until January 18th, conditioned on the posting of an additional $1,100. Thereafter, the court was informed that plaintiffs could not post any additional bond and a request for a further extension was denied.

2. The court was informed by counsel that prior to the layoff there were approximately fifty-five firemen employed by the City of Williamsport.

3. The City of Williamsport has asserted that the firemen were discharged solely for reasons of economy. *See* Doc. No. 18, agreed statement of facts, ¶ 9.1. This is a legitimate reason to reduce the number of firemen under Pennsylvania law. *See* Pa.Stat.Ann. tit. 53, § 39871 (Purdon). There are no allegations here that defendants have not acted in good faith or that the layoffs were for other than economic reasons,. *See infra.*

4. Unless stated otherwise, hereafter the term plaintiffs refers to plaintiffs as citizens and taxpayers, not as municipal employees.

law issues must be amenable to an interpretation by the state courts that would eliminate or narrow the constitutional question. Thirdly, it must appear that an erroneous decision of state law by the federal court would be disruptive of important state policies. *Id.*, p. 686. Defendant claims that state law is uncertain or unresolved here in regard to, inter alia, whether a municipality must hold a public hearing before reducing the number of firemen. But this court looks to state law, not to determine whether that law requires a hearing, but rather to determine whether there has been created a "property" interest. State law may create the underlying substantive interest, but federal constitutional law determines whether the interest rises to a legitimate claim of entitlement. If, it does, federal constitutional law also determines the type of procedural due process that is required. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). I do not believe that state law is unclear here. Rather I believe that state law has not created a "property" interest which would require elected members of a city council to hold a special public type hearing before they could decide to reduce the number of firemen. Therefore, abstention is not appropriate.

### THE "PROPERTY" INTEREST

■ Ordinarily, absent such things as claims of unconstitutional discrimination, or an infringement of a constitutionally protected right, or reprisal for the exercise of a constitutional right, it is not within the province of the federal judiciary to review decisions by a municipality allocating its resources. It is a decision within the scope of authority possessed by municipal executives, and not this court, to determine how many firemen a municipality should employ. *See Towns v. Beame*, 386 F.Supp. 470 (S.D.N.Y.1976); *Cf. Jackson v. New York City Health and Hospital Corp.*, 419 F.Supp. 809 (S.D.N.Y.1976). However, plaintiffs here are not making any substantive due process claim, i. e., they are not directly challenging the actual decision, but rather are asserting that the decision was not ac-complished in accordance with procedural due process rights guaranteed by the Fourteenth Amendment of the United States Constitution.

■ In order to activate the Fourteenth Amendment procedural due process clause, plaintiffs must first possess a "property" interest. The term "property," for due process purposes, is not susceptible of an exact definition. It has been generally stated that "'property' denotes a broad range of interests that are secured by 'existing rules or understandings.' . . . A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). "To have a property interest in a benefit, a person must clearly have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The federal courts have held many interests to be "property" interests. For instance, *see Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) (utility services); *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (Social Security disability benefits); *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (suspension of student from public school for disciplinary reasons); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (welfare benefits). However, the recognizable "property" interests are not infinite. *Board of Regents v. Roth*, supra. Furthermore, no matter what a particular person's subjective expectation may be, if the interest he seeks to have protected by the Fourteenth Amendment is terminable "at will" by governmental authorities, there is no procedural due process protection. *See Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). In essence, if the

interest one seeks to protect cannot be terminated except based on certain criteria, then that interest may be encompassed by the Fourteenth Amendment. One has a right to present his side to those who are depriving him of the interest, a right to show that the acceptable criteria for deprivation have not been met. If there are no factual issues to be resolved, i. e., if one does not, or cannot, dispute the grounds upon which the decision was made, there may be no right to a hearing. *See Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1976).

This underlying "property" interest, upon which the invocation of the Fourteenth Amendment depends, is not created by the Constitution, but rather by an independent source. This independent source may be a particular state's statutory or decisional law. *See Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). Plaintiffs contend that Pennsylvania decisional law has created a "property" interest here.

Plaintiffs' state law argument is based on a line of Pennsylvania cases holding that a city may be liable for negligently failing to supply adequate water to fight fires and, additionally, on one case, *Genes v. City of Duquesne*, 27 Pa.Cmwlth. 620, 367 A.2d 327 (Pa.Cmwlth.1976). In *Genes*, firemen challenged their discharge for economy reasons pursuant to Pa.Stat.Ann. tit. 53, § 39871 (Purdon), the same statute under which plaintiffs here were discharged, *see* n. 3 supra. In upholding the discharge, the court stated that "reasons of economy" (referring to the first sentence of § 39871) "would include, in our judgment, a saving of money by the removal of *unneeded* employees . . . ." (emphasis added) The court went on to state "It is significant that before removing the appellants the City obtained the opinion of experts in the field of firefighting that the reduction in the firefighting force resulting from the appellants' removal would not adversely affect fire protection." It is stipulated here that defendants have not attempted to demonstrate in any forum that plaintiffs were unneeded employees, that their removal would improve efficiency or that their suspension would not jeopardize the public welfare. *See* Doc.No. 18, agreed Statement of Facts, ¶ 9. Plaintiffs have seized upon the language in *Genes* regarding "unneeded" firemen and upon that court's approval of defendants' having satisfied themselves that the post-layoff fire protection was adequate as establishing that state law has recognized or created a "property" interest. As to the line of cases upon which plaintiffs also rely, they are typified by *Printed Terry Finishing Co., Inc. v. City of Lebanon*, 247 Pa.Super. 277, 372 A.2d 460 (1977), allocatur refused. There the Pennsylvania Superior Court held that where a municipality has decided to supply water to its residents for fire fighting purposes, it owes a duty to provide sufficient water for that purpose and where it negligently breaches that duty, it may be liable in damages.

Plaintiffs also assert that *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) supports their position. There the United States Supreme Court found a "property" interest in utility services based on Tennessee decisional law. The Tennessee State Courts had held that, although a company supplying utility service to the public had a right to shut off service for nonpayment, where there was a dispute as to the bill and the company simply cut off the service, the company could be liable for damages if in fact it was wrong. State law also provided that an aggrieved customer might be able to enjoin a wrongful threat to terminate. The Supreme Court stated that the availability of such local law remedies was *evidence* of the state's recognition of a protected interest. However, the court also found that the utility service was not terminable "at will" because it could not be cut off except for good and sufficient cause.

Based on the above cases, plaintiffs contend that, since the City of Williamsport has undertaken to have a paid fire department, adequate fire protection must be maintained and the City cannot reduce the number of fireman without a showing that

the discharged firefighters are unneeded. Therefore, argue plaintiffs, a "property" interest has been created in the citizenry at large which rises to a legitimate claim of entitlement and, hence, requires the protection of the Fourteenth Amendment. I cannot agree.

■ First, I believe that under Pennsylvania state law, firemen are terminable "at will" for reasons of economy. In *Kraftican v. Borough of Carnegie*, 386 A.2d 1064 (Pa. Cmwlth.1978) a policeman challenged his discharge pursuant to Pa.Stat.Ann. tit. 53 § 46190 (Purdon) for economic reasons. The pertinent language of that statute is almost identical to the one under which plaintiffs were discharged, *see* n. 3 supra (and applies to firemen of boroughs as well as policemen). The Commonwealth Court held that the only limitation on the power of a municipality to discharge for reasons of economy was that it must act in good faith. The point of that requirement is that a municipality may not use "reasons of economy" as a ruse in order to lay off a municipal employee who the authorities wish to discharge for other reasons. *See Borough of Cannonsburg v. Flood*, 387 A.2d 951 (Pa. Cmwlth.1978). The good faith requirement would not be for the benefit of the general citizenry because the general citizenry should have no concern with which particular firemen are discharged. It has also been held that, absent a statute or something such as an arbitration award to the contrary, it is up to the city council to determine the number of police to employ. *See Pennsylvania State Lodge Fraternal Order of Police v. City of Wilkes-Barre*, 388 A.2d 1146 (Pa.Cmwlth.1978). I see no reason why the law would be any different with firemen. Hence, as stated, for reasons of economy (which are reasons unrelated to the behavior of the particular employees) firemen are dischargeable "at will" under Pennsylvania law. *Genes*, supra does not alter that conclusion. It predated the two cases cited immediately above and at most it may have somewhat limited a municipali-

ties' discretion or created a duty owed by the municipality, *see infra*. Moreover, the assertion there was that plaintiffs had not been removed for economic reasons. The fact that defendants had consulted firefighting experts supported the claim that the firemen had actually been removed for reasons authorized by the statute.

Secondly, assuming that *Genes* and the other cases relied on by plaintiffs do create duties owed by local governmental units; that these units may be liable for the breach of those duties; and that plaintiffs have a type of "right" to adequate fire protection, it does not follow that they have a "property" interest. Plaintiffs have cited no authority, and the court has found none, for the proposition that a duty owed by a government unit to a citizen automatically creates a "property" interest in the citizen. And, although this argument has surface appeal, I believe that it must fail as a matter of logic. When one has a duty to perform as a reasonable man (or under any standard of conduct), it simply means that, if one fails to so act, he may be liable for any damages his breach legally causes. It does not imply that the person to whom the duty is owed must be consulted before or after the actor acts. There are many situations which do not implicate procedural due process where the government may be liable if it acts negligently. For instance, under the Federal Tort Claims Act a person may proceed against the federal government for damage sustained as a result of negligence. That does not mean that a federal government employee, before or after he decides to act, must grant procedural due process rights to the citizenry at large. Or, more to the point here, could the holding in *Printed Terry Finishing Co., Inc.,* supra, possibly mean that before a municipality can decide to change the water pressure in the hydrants it must first have public hearings? I think, and hope, not.

■ Thirdly, the court is not presented with the type of situation normally encompassed by procedural due process.[5] Ordi-

---

**5.** That, of course, would not be a reason, in and of itself, to hold that an interest was not a

"property" interest encompassed by the Fourteenth Amendment.

narily, a particular individual is being deprived of an interest. The deprivation is clear. Here, although I am assuming that the fire protection in Williamsport is inadequate as a result of the layoffs, this inadequacy is something that generally would have to be proved before plaintiffs could prevail on their claim that defendants have violated the Fourteenth Amendment. A deprivation need not be shown in order to have a "property" interest, but it must be shown in order to prevail in an action which alleges a violation of the Fourteenth Amendment. There is no violation without the deprivation. *See* U.S.Const. Amend. XIV, § 1.[6] To rule that plaintiffs have a "property" interest here would mean that every time a municipality did something, such as changing the type or number of fire trucks, or the system they employ, or any of a myriad of things, they would either first have to grant procedural due process rights to the citizenry or else a citizen could come into federal court and litigate the adequacy of the fire protection. (This would be litigated as a prerequisite to showing a violation of the Fourteenth Amendment.) That situation would be intolerable. This court is not the appropriate forum to review such decisions. *Cf. Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Furthermore, to rule as plaintiffs request would result in an unjustifiable intrusion by the federal courts into the internal workings of a local governmental unit. A municipal government has vast leeway in the management of its internal affairs. *See Sailors v. Board of Education*, 387 U.S. 105, 109, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967). As stated, how many firemen to employ is normally a decision within the scope of authority granted to the governmental unit. I do not believe that any Pennsylvania decisions have changed that.[7]

Lastly, *Memphis Light, Gas, and Water Division, supra,* is distinguishable. There the deprivation was obvious and absolute, the utility services could only be terminated for cause and the customer had a specific dispute with the company regarding her particular bill. Hence, she had to be given a chance to present her side of the dispute before termination. Also, here those effecting the alleged deprivation are acting as duly elected representatives for plaintiffs themselves. Furthermore, in our situation there are the important considerations of comity referred to above.

In sum, the firemen/plaintiffs are terminable "at will" for reasons of economy and even if we assume that Pennsylvania law has established duties in municipalities regarding the maintenance of adequate fire protection, no "property" interest in the general citizenry has been created.

## SCOPE OF THE CIVIL SERVICE HEARING

Plaintiffs as firemen have agreed to seek a Civil Service hearing and defendants have agreed not to oppose the hearing. Hence, plaintiffs no longer assert here that their rights as firemen to procedural due process have been violated. However, they do claim that this court should decide the scope of the Civil Service hearing. In other words they want the court to determine what criteria the Civil Service Commission should use in determining whether the discharges should be sustained, who should have the burden of proof and what the party with this burden should have to establish. I do not believe it is appropriate for this court to rule on those issues. It is true that after a federal court has determined that a party possesses an interest protected by the Fourteenth Amendment, it may then proceed and decide what procedures are due. *See Memphis*

---

**6.** Apparently defendants here have agreed to provide whatever procedures would be due before deprivation if the court determines that plaintiffs have a "property" interest. Therefore, in this particular case, the court would not have to decide if the fire protection in Williamsport is now adequate.

**7.** Also, a wrong decision does not implicate the United States Constitution. *See Bishop v. Wood*, supra.

*Light, Gas and Water Division, v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). However, here the court is no longer presented with any controversy regarding whether plaintiffs as firemen are entitled to Fourteenth Amendment due process protection in regard to their termination. If that issue were present and the court determined that they were not entitled to hearings there would be no need to determine the scope of a hearing, even if the defendants agreed to conduct one. Furthermore, I am satisfied that it is up to the Civil Service Commission, at least in the first instance, to determine the scope of its hearing.[8] The issue is not ripe inasmuch as the procedures employed by the Commission may turn out to be acceptable to plaintiffs.

---

**8.** Civil Service Commissions have in the past held hearings when firemen challenged their removal for reasons of economy. *See Genes v.* *City Duquesne*, 367 A.2d 327 (Pa.Cmwlth. 1976).