## In re Rivera

*Shertzer & Gray,* for petitioners.
*Alspach & Ryder,* for respondent.

MUELLER, *J.* and BUCKWALTER, *J.*, July 15, 1980—The immediate matter before the court is a motion for summary judgment filed by the Lancaster Housing Authority (authority). This action had its roots in a regular meeting of the authority on April 14, 1980. At that meeting, the board of directors of the authority approved a rent increase for all units at the Hickory Tree Heights project to be effective June 1, 1980 as follows: (1) $91 to $141 per month for a two bedroom dwelling; (2) $109 to $169 per month for a three bedroom dwelling. The purpose of the rent increase was to make the Hickory Tree Heights project fiscally secure at some future time in or around 1982. The authority board's decision was based upon a report from its auditors/accountants, Trout, Ebersole and Groff.

On April 22, 1980 the tenants of Hickory Tree Heights received notice of the approval of the rent increase, along with a new lease, which was to go into effect on June 1, 1980. No notice was given prior to approval of the rent increase, and the pro-

posed rent increase had not been listed on the authority's agenda for the April 14th meeting.[1]

At the authority's next regular meeting held May 12, 1980, the Hickory Tree Heights Tenants Association presented an alternative plan, which the authority agreed to consider and forward to its auditors/accountants for review and recommendation. The minutes of that meeting reflect that the authority agreed that if its auditors/accountants recommended a revised rent increase, a special meeting would be held prior to May 31, 1980.

On May 14, 1980 various tenants, hereinafter referred to as appellants, filed a pleading entitled "Petition for Review" in this court. Appellants also filed a petition for supersedeas on May 21, 1980. The authority filed preliminary objections, a supporting brief and an application for security on May 23, 1980. On May 29, 1980, a hearing was held on the petition for supersedeas.[2] The evidence disclosed that the Hickory Tree Heights project has 100 units, and the authority has only month-to-month leases with the tenants terminable on 30

---

1. At the time of the last rent increase in 1978 the proposed rent increase had been listed on the agenda for the regular monthly meeting of the authority which agenda is publicly posted.

2. The authority presented testimony at this hearing to the effect that the Hickory Tree Heights project is not and is not intended to be what is traditionally termed "low income housing." A survey of the gross income of the tenants taken in March of 1980 was introduced which showed that the lowest income reported for 1979 was $5,076 and the highest $24,129 with the 1979 average income being $11,568. Two-thirds of the tenants responded to the survey.

days' notice.[3] Not all of the tenants are appellants. The only income to the authority is from rents, and the Hickory Tree Heights project has been operating at a deficit for at least the last four years. On May 30, 1980 this court granted a supersedeas to appellants conditioned on the payment of security in the monthly amount of $25 per tenant-party which is to be placed in an escrow account until final decision of this court. A separate order determined that the Pennsylvania Rules of Appellate Procedure would control further proceedings in this matter. Upon application by counsel for authority the security for the supersedeas was modified by order dated June 6, 1980.[4]

The authority filed the present motion for summary judgment on June 25, 1980, and argument was held on July 7, 1980 after both parties had filed briefs. This court has carefully reviewed the arguments raised by both parties. The court finds that it is unable to conclude that the authority as the moving party is entitled to summary relief under

3. The authority was created under the Housing Authorities Law of this Commonwealth, Act of May 28, 1937, P.L. 955, as amended, 35 P.S. §1541, and developed the Hickory Tree Heights housing project beginning in 1950. The parties agree that the Hickory Tree Heights project is not a federally subsidized project, and that the grant by the Commonwealth of Pennsylvania to the authority has been repaid. The authority still has two years remaining to redeem all of its First Mortgage Revenue Bonds dated as of June 15, 1950 which were issued to help fund the project in 1950.

4. The security was changed from a flat $25 per tenant-party to $30 per tenant-party per month for a two bedroom apartment and $35 per tenant-party per month for a three bedroom unit.

Pa.R.A.P. 1532, which Rules of Appellate Procedure were established as controlling further proceedings by the order dated May 30, 1980. Therefore, the court will deny the motion for summary judgment.

Both counsel stated at argument that if the court determined that summary judgment was inappropriate, the court should then proceed to a determination of the petition for review on the merits. Counsel for the appellants also stated that appellants had no further testimony to present. Section 754(b) of the Local Agency Law, 2 Pa.C.S.A. § 754(b), provides that:

"(b) Complete record.—In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Sub-chapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S § 706 (relating to disposition of appeals.)"

The question as to whether the authority's decision to adopt a rental increase constituted an "adjudication" pursuant to 2 Pa.C.S.A. § 101 was presented for consideration by this court. The pertinent part of the definition found in section 101 provides that an adjudication consists of "[a]ny final

order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made."

We find that the authority's decision to adopt a rental increase does not constitute an adjudication as defined in section 101. The following quote from Local 736, etc. v. City of Williamsport, 470 F. Supp. 344, 347 (M.D. Pa. 1979), defines to our satisfaction the term personal or property rights or interests:

"'To have a property interest in a benefit, a person must clearly have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.' Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed. 2d 548 (1972). The federal courts have held many interests to be 'property' interests. For instance, see Memphis Light, Gas and Water Division v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed. 2d 30 (1978) (utility services); Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed. 2d 18 (1976) (Social Security disability benefits); Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed. 2d 725 (1975) (suspension of student from public school for disciplinary reasons); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed. 2d (1970) (welfare benefits). However, the recognizable 'property' interests are not infinite. Board of Regents v. Roth, supra. Furthermore, no matter what a particular person's subjective expectation may be, if the interest he seeks to have protected by the Fourteenth Amendment is terminable 'at will' by governmental authorities, there is no procedural due process protection. See Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed. 2d 684 (1976). In essence, if the

interest one seeks to protect cannot be terminated except based on certain criteria, then that interest may be encompassed by the Fourteenth Amendment. One has a right to present his side to those who are depriving him of the interest, a right to show that the acceptable criteria for deprivation have not been met. If there are no factual issues to be resolved, i.e., if one does not, or cannot, dispute the grounds upon which the decision was made, there may be no right to a hearing. See Codd v. Velger, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed. 2d 92 (1976)."

In this case, the authority may terminate the lease of any tenant by simply giving the appropriate notice required by the month-to-month lease. The authority, in terminating a lease, does not have to make any factual determination nor does it have to apply any certain criteria. To suggest that a tenant has a property interest in such a tenuous arrangement as to require a due process hearing whenever a rent increase is proposed is to stretch the definition of propety interest beyond reasonable boundaries.

In Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972), the Supreme Court said, inter alia, that, (1) procedural due process applies only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property, but the range of such interests is not infinite, and (2) procedural due process protects only those property interests that a person has already acquired in specific benefits.

The Roth case, supra, concerned a professor who had an employment contract that was by its terms to terminate at the end of the academic year. When the professor was not rehired, he was given no rea-

son for the decision and no hearing of any sort to challenge the decision. In denying that this infringed upon the constitutional rights of the professor, the Supreme Court said that he was not deprived of a property interest because the terms of his employment specifically provided that it was to terminate at the end of the year.

The situation in the case before this court is comparable. Indeed, not only may the authority terminate each lease with proper notice, which appellants do not contend was not given, but each appellant may do the same as well. We cannot agree with appellants' argument set forth in counsel's brief that "the authority must in some manner have indicated to the tenants that they could rely upon the continued benefit of public housing" by the action of the authority in sending on April 22, 1980 to all tenants a letter terminating the existing month-to-month lease effective May 31, 1980 and enclosing a new month-to-month lease with the higher monthly rental. The fact is that we have in this case a standard month-to-month lease for each tenant which creates no propety right that is protected other than the specific benefits required for each monthly period the lease is in effect.

Although factually different from this case, People's Rights Organization v. Bethlehem Associates, 356 F. Supp. 407, 413 (E.D. Pa. 1973), is of interest because the U.S. District Court, while deciding the matter on a question of jurisdiction, cited the following from Roth, supra: "'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must, instead, have a legitimate claim of entitlement to it. 408 U.S. at 577.'" The court concluded that a tenant in a federally assisted low income housing project,

under the Roth analysis, would not have a property interest in a certain rental charge.

While the Hickory Tree Heights housing project is not federally assisted, the analysis as to whether or not there is a propety interest in a rental charge using the Roth test above leads us to the same conclusion as reached by the U.S. District Court for the Eastern District of Pa. in the Bethlehem Associates case; that is, that appellants in this case have no property interest in the proposed rental change.

Since this court concludes that the authority's decision to adopt a rental increase was not an adjudication under the Local Agency Law, the provisions of section 553 of that act providing for reasonable notice of a hearing and an opportunity to be heard are not required by law: 2 Pa.C.S.A. §553.

However, the court does feel constrained to comment on the authority's approach to this substantial rent increase in a public housing project. The substantial rent increase became effective by the authority's action in approximately 45 days. The record filed by the authority includes a copy of the minutes of the board's meeting on April 14, 1980. Also made a part of the minutes of that meeting was the rent projection report by the authority's auditors/accountants which report is dated April 11, 1980, only three days before the meeting. There is nothing in the minutes to show if the board members had received a copy of this report before the meeting. If notice to the tenants of the intent to consider a rent increase had been given, the action may have prevented the ensuing legal proceedings by providing the tenants an opportunity to be heard before the resolution was adopted and not, as has developed, after the rent increase was approved. In 1978 when the last rent increase was made, the

authority board's agenda listed this as a subject for discussion at the July meeting. While such a notification or a pre-hearing is not required by law in our opinion, it certainly would have been a sensible procedure where the rent was increased approximately 55 percent for all tenants.

## ORDER

And now, July 15, 1980, the motion for summary judgment filed by respondent Lancaster Housing Authority is denied. In view of the desire of the parties as expressed at oral argument to proceed on the existing record, the court dismisses the petition for review and revokes the supersedeas and the orders dated May 30, 1980 and June 6, 1980 except paragraph 5 of the order of June 6, 1980 relating to the disposition of the money paid as security by appellants which shall be applied by the authority to rent owed by each appellant.